UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ESTHER ACQUAYE,<br><br>Defendant. | CRIMINAL NO.<br><br>VIOLATIONS:<br><br>18 U.S.C. § 371 (Count 1)<br>Conspiracy to Acquire, Possess, and Redeem SNAP Benefits in an Unauthorized Manner, to Convert Public Money, and to Traffic in Counterfeit Goods<br><br>7 U.S.C. § 2024(b); 18 U.S.C. § 2 (Count 2)<br>SNAP Fraud; Aiding and Abetting<br><br>18 U.S.C. § 2320(a)(1) (Count 3)<br>Trafficking in Counterfeit Goods<br><br>7 U.S.C. § 2024(f); 18 U.S.C. §§ 2323(b)(1), 981(a)(1)(C) and 2323; and 28 U.S.C. § 2461(c) – Forfeiture Allegations |

## INFORMATION

The Acting United States Attorney charges that:

1. At all times pertinent to this Information, Esther's Fashion Paradise ("Esther's") was a small retail store located at 872A Main Street, Worcester, Massachusetts. The store's inventory consisted of, among other things: (1) miscellaneous food items, water, and soda, and (2) non-food items, such as clothing, jewelry, and beauty products.

2. At all times pertinent to this Information, Defendant ESTHER ACQUAYE ("ACQUAYE") was the owner and operator of Esther's.

1

3. At all times pertinent to this Information, Esther's was authorized by the United States Department of Agriculture ("USDA") under the Food and Nutrition Act of 2008, now known as the Supplemental Nutritional Assistance Program ("SNAP" or "Program"), to accept USDA SNAP benefits and the Electronic Benefit Transfer ("EBT") cards on which a SNAP recipient's SNAP benefits were loaded.

4. At all times pertinent to this Information, USDA Food and Nutrition Service ("FNS") oversaw the Program.

5. On or about July 30, 2013, ACQUAYE submitted online an FNS SNAP application on behalf of Esther's to participate in the Program. As part of the application process, ACQUAYE signed a document indicating she understood that trading cash for SNAP benefits was a violation of SNAP regulations and that accepting SNAP benefits for the purchase of non-eligible food items was a violation of SNAP regulations. On or about August 7, 2013, FNS received the signed Certification and Signature page of ACQUAYE's FNS SNAP application.

6. Esther's began redeeming SNAP benefits in or around November 2013.

7. At all times pertinent to this Information, SNAP benefits redeemed by Esther's were electronically deposited into a bank account controlled by ACQUAYE (the "SNAP Account").

8. On at least four (4) occasions between November 2, 2015 and March 9, 2016, ACQUAYE accepted an EBT card from an undercover investigator as payment for counterfeit retail goods. Specifically, during those four (4) occasions, ACQUAYE sold two purses bearing counterfeit Michael Kors marks, one purse bearing counterfeit Gucci marks, and one coat bearing counterfeit The North Face marks and accepted an EBT card as payment for those goods, which

resulted in an equal value of SNAP benefits being electronically transferred to Esther's. The Manufacturer's Suggested Retail Price ("MSRP") for the genuine goods on these four (4) occasions was $2,386.00.

       9.      In addition, on November 17, 2015, ACQUAYE sold a wallet bearing counterfeit Michael Kors marks. The MSRP for the genuine Michael Kors wallet was $148.00.

**COUNT ONE**:   Conspiracy to Acquire, Possess, and Redeem SNAP Benefits in an Unauthorized Manner, and to Convert Public Money
(18 U.S.C. § 371)

10.   The Acting United States Attorney re-alleges and incorporates by reference the allegations in paragraphs 1 – 7 of this Information and further charges:

11.   Beginning in or about November 2013, and continuing thereafter until on or about April 19, 2016, in Worcester, Massachusetts,

**ESTHER ACQUAYE,**

defendant herein, did knowingly combine, conspire, confederate, and agree with other persons, both known and unknown to the Acting United States Attorney, to commit an offense against the United States, that is, to:

  a.   knowingly use, transfer, acquire, alter and possess SNAP coupons, authorization cards, and access devices having a value of $5,000 or more, in a manner not authorized by Title 7, United States Code, Chapter 51 and the regulations issued pursuant to Chapter 51, that is, by paying cash to SNAP benefit recipients in exchange for SNAP benefits, in violation of Title 7, United States Code, Section 2024(b); and

  b.   knowingly and willfully embezzle, steal, purloin, and convert to her own use money and things of value of the United States and any department and agency thereof, to wit, USDA, that is, SNAP benefits which had come into her possession by virtue of Esther's participation in the Program, in violation of Title 18, United States Code, Section 641.

4

### Manner and Means of the Conspiracy

12. It was a part of the conspiracy that ACQUAYE would purchase from SNAP recipients SNAP benefits for cash at a discounted face value of approximately fifty cents for every SNAP dollar benefit, and then receive the full face value of the SNAP benefits fraudulently obtained, by means of electronic deposit from the USDA into the SNAP Account.

13. In particular, it was part of the conspiracy that, on numerous occasions between November 2013 and April 19, 2016, at Esther's, ACQUAYE accepted EBT cards from SNAP recipients wishing to exchange their SNAP benefits for cash, passed those EBT cards through a point-of-sale ("POS") terminal for the purpose of causing the full value of the SNAP benefits to be electronically transferred to Esther's, and provided less than the full value of the SNAP benefits in cash to the SNAP recipients.

14. It was further a part of the conspiracy that between approximately November 2013 and April 19, 2016, ACQUAYE caused approximately $282,541.76 in fraudulent EBT transactions and SNAP benefits to be transacted at Esther's, resulting in the electronic deposit of $282,541.76 into Esther's SNAP Account.

### Overt Acts

15. In furtherance of the conspiracy and to accomplish the objects of the conspiracy, ACQUAYE and her co-conspirators committed and caused to be committed the following overt acts, among others, in the District of Massachusetts:

    a. From at least on or about November 6, 2013, through April 19, 2016, ACQUAYE purchased and caused to be purchased at Esther's approximately $282,541.76 in SNAP benefits at a discounted face value,

5

        paying approximately fifty percent of that value in cash to SNAP recipients for those benefits.

b.    As a direct result of this cash purchase of SNAP benefits and/or acceptance of SNAP benefits as payment for non-SNAP eligible retail goods, ACQUAYE caused the full face value of the SNAP benefits to be electronically deposited into the SNAP Account.

All in violation of Title 18, United States Code, Section 371.

**COUNT TWO:**        SNAP Fraud (7 U.S.C. § 2024(b));
                     Aiding and Abetting (18 U.S.C. § 2)

16.    The Acting United States Attorney re-alleges and incorporates by reference the allegations in paragraphs 1 – 8 of this Information and further charges:

17.    From at least on or about November 6, 2013, up to and including on or about April 19, 2016, in the District of Massachusetts,

**ESTHER ACQUAYE,**

defendant herein, knowingly used, transferred, acquired, and possessed, and caused to be used, transferred, acquired and possessed, SNAP coupons, authorization cards, and access devices of a value of $5,000 or more in a manner not authorized by Title 7, United States Code, Chapter 51 and the regulations issued pursuant to Chapter 51, in that ACQUAYE did exchange and caused to be exchanged SNAP recipients' benefits for cash at Esther's and did accept SNAP benefits for non-SNAP eligible retail goods, including counterfeit goods.

All in violation of Title 7, United States Code, Section 2024(b) and Title 18, United States Code, Section 2.

**COUNT THREE**:　　　　Trafficking in Counterfeit Goods (18 U.S.C. § 2320(a)(1))

18.　　The Acting United States Attorney re-alleges and incorporates by reference the allegations in paragraphs 1, 2, 8 and 9 of this Information and further charges:

19.　　From in or about November 2013 and continuing through on or about April 19, 2016, in the District of Massachusetts,

**ESTHER ACQUAYE,**

defendant herein, did intentionally traffic and attempt to traffic in goods, that is, apparel, shoes, and accessories, and knowingly use counterfeit marks on and in connection with such goods, that is, marks for Michael Kors, UGG, Louis Vuitton, Gucci, The North Face, True Religion, Seven for All Mankind, Coach, Burberry, Chanel and Nike, which counterfeit marks were identical to and substantially indistinguishable from genuine marks in use and registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of such marks was likely to cause confusion, to cause mistake, and to deceive.

All in violation of Title 18, United States Code, Section 2320(a)(1).

**FORFEITURE ALLEGATIONS:**     7 U.S.C. § 2024(f); 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c)

The Acting United States Attorney further charges that:

20. Upon conviction of the offense alleged in Count One of this Information,

**ESTHER ACQUAYE,**

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense. The property to be forfeited includes, but is not limited to, the following:

> (a) $282,541.76 in United States currency, to be entered in the form of a forfeiture money judgment, which represents proceeds of the defendant's offense.

21. Upon conviction of the offense alleged in Count Two of this Information,

**ESTHER ACQUAYE,**

defendant herein, shall forfeit to the United States, pursuant to Title 7, United States Code, Section 2024(f), Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c):

> (a) all property, real and personal, used in the transaction or attempted transaction, to commit, or to facilitate the commission of, the offense (other than a misdemeanor), or proceeds traceable to such offense; and/or
>
> (b) any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense.

Such property includes, without limitation:

> (a) $282,541.76 in United States currency, to be entered in the form of a forfeiture money judgment, which represents proceeds of the defendant's offense.

9

22.     Upon conviction of the offense alleged in Count Three of this Information,

**ESTHER ACQUAYE,**

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section § 2323(b)(1), (i) any article, the making or trafficking of which is prohibited under Title 18, United States Code, Section 2320; (ii) any property used, or intended to be used, in any manner or part, to commit or facilitate the commission of such offense; and (iii) any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of such offense.   The property to be forfeited includes, but is not limited to, the following:

(a) a forfeiture money judgment equal to the amount of the proceeds of offense.

23.     If any of the property described in Paragraphs 20, 21, and 22, above, as being forfeitable pursuant to Title 7, United States Code, Section 2024(f), Title 18, United States Code, Sections 981(a)(1)(C) and 2323(b)(1), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with a third party;

(c) has been placed beyond the jurisdiction of this Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 2323(b)(2), both incorporating Title 21, United States

Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraphs 20, 21 and 22 above.

All pursuant to Title 7, United States Code, Section 2024(f); Title 18, United States Code, Sections 981(a)(1)(C) and 2323(b); and Title 28, United States Code, Section 2461(c).

11

Respectfully submitted,

WILLIAM D. WEINREB
Acting United States Attorney

By: /s/ Michelle L. Dineen-Jerrett
MICHELLE L. DINEEN-JERRETT
Assistant U.S. Attorney

Dated: August 23, 2017